1SHORTESS, Judge,
dissenting.
Was there a legal duty assumed by Placid in this case when it advised Penrod employees as to problems regarding contracting malaria while they worked in Zambia? If so, then the grant of summary judgment was erroneous because so many issues of material fact flow from the issue of whether there was a breach of that duty.
My examination of this case convinces me Placid did assume a legal duty. It retained Dr. F. Kevin Murphy, a tropical disease specialist in Dallas, Texas, to advise it as to what medical precautions should be taken during the Zambia project. Murphy prepared a seven-page report on August 5, 1987, addressed to Tom Stroud, manager of drilling operations, wherein he sets forth health risks in Zambia, including malaria. Placid gave Penrod the Murphy report (which became part of the orientation kit furnished to all of its Zambia-bound employees).
*933 Zambia operations began in August 1987. In November, a Placid employee contracted malaria and was treated by Murphy in Dallas. Murphy called Stroud and re-emphasized his August 1987 recommendations. Stroud, however, did not communicate to Penrod any of Murphy’s concerns at that time.
In February 1988, another Placid employee got malaria. He was also seen by Murphy when he returned to the United States. On February 11, 1988, Murphy wrote to Placid’s Personnel Director, Bob Adkins, indicating that he felt, at the least, that his original (August 1987) recommendations were not being followed.
Then on February 20, 1988, plaintiff was admitted to Terrebonne General Hospital. Unfortunately, Adkins did not 12forward Murphy’s February 11, 1988, communication to Penrod until February 23, 1988. (It was received on February 29.)
Clearly, in my opinion, Placid was interested and concerned with diseases its personnel might contract in Zambia, including malaria. To help assure a safe operation, it had taken affirmative steps to educate its personnel and subcontractors on the precautions necessary to minimize the effects of malaria. By so doing, Placid assumed a legal duty toward its own employees and its subcontractor Pen-rod’s employees to properly educate them on such precautions. Had Adkins promptly forwarded the February 11, 1988, communication to Penrod, perhaps plaintiff would have taken the treatment recommended by Murphy in his August 1987 report:
In the event of malaria-like illness consisting of high fever, shaking chills, and headache, three tablets of [F]ansidar, each consisting of 25 milligrams pyrimethamine and 500 milligrams sulfadoxine should be taken by mouth. Prompt medical attention should then be sought.
Whether there was a breach remains to be proven. At this point in the litigation, I see too many issues of fact and would reverse the grant of summary judgment.
I respectfully dissent.